**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vinay Yerrapareddypeddireddy, et al., | No. CV-20-01476-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Matthew T. Albence, et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiffs Vinay Kumar Reddy Yerrapareddypeddireddy and Anusha Ratikrindi (together, "Plaintiffs") are Indian nationals who enrolled at the University of Farmington ("Farmington"). In January 2019, Farmington was shut down and revealed to be a fake university, operated by U.S. Immigration and Customs Enforcement ("ICE"), that was designed to ensnare recruiters and students who sought to abuse the student visa program. Plaintiffs contend that, based on Farmington's closure, they experienced various immigration consequences. Those consequences form the basis for this lawsuit, which Plaintiffs have brought against the heads of ICE, the Department of Homeland Security ("DHS"), and U.S. Citizenship and Immigration Services ("USCIS"). As summarized in the Rule 26(f) report, Plaintiffs wish to "challenge what they perceive as the agencies' determination of themselves having engaged in visa fraud" and seek "injunctive and declaratory relief because [they] believe[] the agencies' conduct was unconstitutional and violated the Administrative Procedure Act." (Doc. 14 at 3.)

Now pending before the Court are the parties' cross-motions for summary judgment. (Docs. 24, 27.) The motions are fully briefed and neither side requested oral argument. For the following reasons, Defendants' motion is granted and Plaintiffs' motion is denied.

**BACKGROUND**

I. <u>Administrative Record</u>

Judicial review of an administrative decision is generally limited to the record that was before the agency when it rendered its decision. *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976). *See also United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714-715 (1963) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). To that end, Defendants have provided a copy of the Certified Administrative Record ("CAR"). (Docs. 36-43.) Unfortunately, many of Plaintiffs' arguments are premised on purported facts not contained in the CAR. (Doc. 25 [Plaintiffs' separate statement of facts]; Doc. 32 [Defendants' controverting statement of facts, noting that nearly all of Plaintiffs' asserted facts are "not reflected in any of the CARs"].) As a result, after the parties submitted their cross-motions for summary judgment, the Court issued an order explaining that it had "significant concerns about the evidentiary support for Plaintiffs' assertions" and requiring Plaintiffs to file a supplemental brief "limited to identifying, *with clarity*, evidence that is in the CAR or otherwise subject to judicial notice that" supports certain assertions. (Doc. 44.) In response, Plaintiffs acknowledged that "vital documentation/evidence" is missing from the CAR. (Doc. 47 at 1.) As discussed in more detail below, Plaintiffs' failure to ground their arguments in the administrative record is one reason why Plaintiffs are not entitled to relief in this action.

II. <u>Uncontested Factual And Legal Background</u>

The facts below are taken from the parties' summary judgment briefing and other documents in the record, with citations to the CAR when possible. Facts not found in the CAR are uncontroverted unless otherwise noted.

A. **Legal Background On Student Visas And Practical Training**

Congress has authorized nonimmigrant status, known as "F-1 student status," for foreign nationals who enroll in approved academic institutions. 8 U.S.C. § 1101(a)(15)(F). F-1 visa-holders are admitted to the United States for "duration of status." 8 C.F.R. § 214.2(f)(5)(i). Duration of status is defined as "the time during which an F-1 student is pursuing a full course of study at an educational institution approved by [USCIS] for attendance by foreign students, or engaging in authorized practical training following completion of studies." *Id.*

An F-1 student maintains valid status by "making normal progress toward completing a course of study." 8 C.F.R. § 214.2(f)(5)(i). An F-1 student may also maintain valid status through "authorized practical training." *Id.* There are two types of such training: curricular practical training ("CPT") and optional practical training ("OPT"). *Id.* § 214.2(f)(10). Both must be "directly related to [a student's] major area of study." *Id.* Holders of a "[s]cience, technology, engineering, or mathematics (STEM)" degree may "apply for an extension of OPT" for up to 24 months beyond completion of their qualifying degree. *Id.* § 214.2(f)(10)(ii)(C).

A student who fails to maintain a full course of study, or whose F-1 student status is otherwise terminated, may apply for reinstatement. 8 C.F.R. § 214.2(f)(16)(i). "If [USCIS] does not reinstate the student, the student may not appeal that decision." *Id.* § 214.2(f)(16)(ii).

B. **Student And Exchange Visitor Information System**

The Student and Exchange Visitor Information System ("SEVIS") is, according to the USCIS website,[1] "the Web-based system that [DHS] uses to maintain information on Student and Exchange Visitor Program (SEVP) schools [and] students who come to the United States to attend those schools." U.S. Immigration and Customs Enforcement, *SEVIS Overview*, https://www.ice.gov/sevis/overview (last visited Nov. 10, 2021).

---

[1] The Court may take judicial notice of government websites. *Gerritsen v. Warner Bros. Ent., Inc.*, 112 F. Supp. 3d 1011, 1033-34 (C.D. Cal. 2015).

"Schools use SEVIS to petition SEVP for certification, which allows the school to offer programs of study to nonimmigrant students. Designated school officials of SEVP-certified schools use SEVIS to . . . [u]pdate school information and apply for recertification of the school . . . , [i]ssue Forms I-20[2] to specific nonimmigrants to obtain F or M status while enrolled at the school, [f]ulfill the school's legal reporting responsibility regarding student . . . compliance with the terms of the student visa, [and] transfer the student SEVIS records to other institutions." *Id.*

### C. **Farmington**

In November 2015, Homeland Security Investigations ("HSI"), which is a component of ICE, established a university in Farmington Hills, Michigan called the University of Farmington. (Doc. 25 ¶ 19; Doc. 28 ¶¶ 1-2.) "HSI established Farmington as part of an undercover operation targeting academic recruiters and foreign students." (Doc. 28 ¶ 2; Doc. 33 ¶ 2.)

Farmington occupied a building in Farmington Hills, maintained a visible web presence, and had active social media accounts. (Doc. 1 ¶ 29; Doc. 11 ¶ 29.) Farmington's putative president, "Dr. Ali Milani, Ph.D.," maintained a LinkedIn profile, responded to requests and inquiries from brokers and recruiters, and at times referred Farmington enrollees to brokers and recruiters. (*Id.*) "DHS bolstered the university's appearance of legitimacy by listing [Farmington] on DHS' official website as certified for participation in SEVP." (Doc. 1 ¶ 30; Doc. 11 ¶ 30.) DHS secured listings and independently verifiable accreditations for Farmington as part of the undercover operation. (*Id.*)

From 2015 to 2019, Dr. Milani and others posing as Farmington staff responded to requests and inquiries from brokers and recruiters. (Doc. 1 ¶ 31; Doc. 11 ¶ 31.) Plaintiffs assert that "the brokers and [Farmington] ensnared these students with promises that they could continue lawfully working in the U.S. through CPT without any immediate need to

---

[2] Form I-20 is a "Certificate of Eligibility for Nonimmigrant Student Status." Department of Homeland Security, *Students and the Form I-20*, https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 (last visited November 10, 2021).

attend classes at [Farmington]. Some students were told that they could not enroll in classes because they were full; others that the school would soon offer classes online. Students were assured, however, that [Farmington's] offering of OPT to students upon enrollment was consistent with applicable regulations governing practical training in the F-1 program." (Doc. 1 ¶ 32.) Defendants admit that they "provided Plaintiffs with endorsements that purported to authorize CPT" but deny the remainder of Plaintiffs' allegations on these points. (Doc. 11 ¶ 32.)

In January 2019, ICE permanently shut down Farmington and arrested eight brokers and recruiters for visa fraud and other crimes in connection with the Farmington operation. (Doc. 25 ¶ 20; Doc. 28 ¶ 4; Doc. 33 ¶ 4.)

In the complaint, Plaintiffs allege that "[i]mmediately following the operation's public announcement, ICE began terminating the SEVIS records and I-20s for each of the more than 100 noncitizens who had enrolled at [Farmington] for their 'fraudulent enrollment.' Specifically, ICE made a blanket finding that any noncitizen who enrolled in [Farmington] knowingly participated in visa fraud by enrolling at [Farmington] for the sole purpose of illegally obtaining and/or maintaining their F-1 nonimmigrant status. ICE did not provide students with an individualized hearing or any meaningful opportunity to contest its determination that they had committed knowing visa fraud by enrolling in [Farmington]." (Doc. 1 ¶ 36.) Plaintiffs also allege that "[c]ontrary to its established practice and policy, ICE did not provide these students with any advance notice that the school's SEVIS designation would be terminated, nor any opportunity to transfer to another school or apply for a chance [sic] of status before their SEVIS records were terminated." (*Id.* ¶ 37.)

D. **Yerrapareddypeddireddy**

Plaintiff Vinay Yerrapareddypeddireddy is an Indian national who was admitted to the United States in April 2015. (Doc. 28 ¶ 6; Doc. 30 ¶ 6.) Yerrapareddypeddireddy was an F-1 student for several years and engaged in OPT after graduation at Northwestern Polytechnic University in California. (*Id.*)

- 5 -

In October 2017, Yerrapareddypeddireddy was accepted at Farmington. (Doc. 1 ¶ 47; Doc. 11 ¶ 47.)

On January 29, 2019, SEVP's analysis and operations center issued a letter to Yerrapareddypeddireddy stating that "your SEVIS record and your Form I-20 . . . issued by the University of Farmington . . . has been set to terminated status for otherwise failing to maintain status. The University of Farmington has been closed by [ICE]. Since the school has been closed and your SEVIS record has been set to Terminated, you must file for reinstatement or depart from the United States. For instructions on how to file for a reinstatement, visit www.uscis.gov." (Doc. 27-1.)

Plaintiffs allege, and Defendants do not dispute, that on January 30, 2019, "Yerrapareddypeddireddy's house was raided by ICE and he was detained without bond at the Eloy Detention Center in Eloy, Arizona." (Doc. 1 ¶ 48; Doc. 11 ¶ 48. *See also* Doc. 36-2 at 104 [executed arrest warrant].)

On January 31, 2019, DHS served Yerrapareddypeddireddy with a Notice to Appear ("NTA"), charging him as removable from the United States pursuant to INA § 237(A)(1)(C)(i). (Doc. 36-2 at 9, 44-46.)

On February 8, 2019, DHS filed a Form I-862 with the Eloy Immigration Court, thereby initiating removal proceedings against Yerrapareddypeddireddy. (*Id.* at 9.) Initially, Yerrapareddypeddireddy was ordered to remain in custody throughout the pendency of his removal proceedings. (*Id.*) However, Yerrapareddypeddireddy was later released on bond. (*Id.* at 9-10.)

On April 15, 2019, Yerrapareddypeddireddy sought reinstatement of his F-1 status by filing a Form I-539, Application to Change or Extend Status. (Doc. 28 ¶¶ 10, 12; Doc. 33 ¶¶ 10, 12. *See also* Doc. 36-1 at 6-11 [completed Form I-539].) Yerrapareddypeddireddy's stated plan was to attend an MBA program at Grand Canyon University. (Doc. 28 ¶ 12; Doc. 33 ¶ 12.)

On August 2, 2019, Yerrapareddypeddireddy's reinstatement application was approved. (Doc. 36-1 at 6 ["approved" date stamp in upper right-hand corner].) However,

this approval was later revoked. (Doc. 28 ¶ 14; Doc. 33 ¶ 14.) As of March 26, 2021, Yerrapareddypeddireddy's reinstatement application remained pending. (*Id.*)

### E. **Ratikrindi**

Plaintiff Anusha Ratikrindi is an Indian national who was admitted to the United States in September 2014 as an F-1 student. (Doc. 28 ¶ 15; Doc. 33 ¶ 15.) Ratikrindi attended California State University, then graduated from Northwestern Polytechnic University in California, and then participated in OPT after graduation. (Doc. 28 ¶¶ 16-17; Doc. 33 ¶¶ 16-17.)

In 2017, Ratikrindi transferred to Farmington, where she pursued CPT. (Doc. 28 ¶ 18; Doc. 33 ¶ 18.) Plaintiffs allege, but Defendants deny, that Ratikrindi chose to transfer to Farmington, despite having the option to pursue a master's degree at Grand Canyon University, because "a friend of hers recommended [Farmington]" and because "[a]fter researching online and seeing that University of Farmington was recognized by DHS as an authorized school for the F-1 program, Ms. Ratikrindi decided [to] enroll there." (Doc. 1 ¶¶ 49-50; Doc. 11 ¶¶ 49-50.)

On April 12, 2018, Tekdoors Inc. ("Tekdoors"), Ratikrindi's then-employer, applied to USCIS to convert Ratikrindi's visa status to H-1B.[3] (Doc. 37-1 at 11.)

On January 9, 2019, Tekdoors' application was granted and Ratikrindi was granted H-1B visa status. (Doc. 37-1 at 11.) The approval notice specified that Ratikrindi's H-1B visa would remain valid from January 9, 2019 through September 13, 2021. (*Id.*)

On January 30, 2019, "ICE agents appeared at [Ratikrindi's] house and handed her an NTA. She does not currently have a hearing date set for Immigration Court as DHS agreed to terminate her removal proceedings." (Doc. 1 ¶ 50; Doc. 11 ¶ 50.)

In February 2019, Tekdoors filed a request to withdraw Ratikrindi's H-1B petition.

---

[3] An "H-1B" visa, "presumably so named after the class's subsection in the [Immigration and Naturalization Act]," is available to "an alien . . . who is coming temporarily to the United States to perform services . . . in a specialty occupation . . . who meets the requirements for the occupation specified in section 1184(i)(2) of this title." *United States v. Gear*, 9 F.4th 1040, 1045 (9th Cir. 2021) (citations and quotation marks omitted).

(Doc. 28 ¶ 21; Doc. 33 ¶ 21.)[4]

On March 6, 2019, USCIS granted Tekdoors' request.  (Doc. 28 ¶ 22; Doc. 33 ¶ 22.)

On February 28, 2020, Atos Syntel ("Atos"), apparently Ratikrindi's new employer, petitioned for renewal of Ratikrindi's H-1B visa status.  (Doc. 40-1 at 15, 45.)

On March 5, 2020, Atos's application was granted and Ratikrindi was granted H-1B visa status.  (Doc. 45-1 at 45.)  The approval notice specified that Ratikrindi's H-1B visa would remain valid from March 5, 2020 through December 31, 2022.  (*Id.*)

II.     Procedural Background

On July 23, 2020, Plaintiffs filed the complaint.  (Doc. 1.)

On October 9, 2020, Defendants filed their answer.  (Doc. 11.)

On March 26, 2021, Plaintiffs filed a motion for summary judgment.  (Doc. 24.)  The submission included a statement of facts and memorandum of points and authorities.  (Docs. 25, 26.)  That same day, Defendants filed their cross-motion for summary judgment.  (Doc. 27.)  The submission included a statement of facts.  (Doc. 28.)

On April 26, 2021, Plaintiffs filed their response to Defendants' cross-motion for summary judgment.  (Doc. 30.)  The submission included a controverting statement of facts.  (Doc. 33.)  That same day, Defendants filed their response to Plaintiffs' motion for summary judgment.  (Doc. 31.)  The submission included a controverting statement of facts.  (Doc. 32.)

On May 10, 2021, Defendants filed a reply in support of their cross-motion for summary judgment.  (Doc. 35.)[5]

On May 14, 2021, Defendants submitted the CAR.  (Docs. 36-40.)

On May 27, 2021, Defendants manually lodged a non-electronic exhibit.  (Doc. 43)

On October 14, 2021, the Court ordered supplemental briefing from Plaintiffs.  (Doc. 44.)

On November 6, 2021, Plaintiffs filed their supplemental brief.  (Doc. 47.)

---

[4]     Although Plaintiffs dispute why Tekdoors filed the withdrawal application, they don't dispute that it was filed.  (Doc. 33 ¶ 21.)

[5]     Plaintiffs did not, in contrast, file a reply in support of their motion.

**DISCUSSION**

I.   Standard Of Review

Under the Administrative Procedure Act ("APA"), a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "The Supreme Court has held that the ultimate standard of review under 5 U.S.C. § 706(2)(A) is a narrow one, noting that a court is not empowered by section 706(2)(A) to substitute its judgment for that of the agency." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994) (citations omitted).

"[W]here, as here, the district court is reviewing the decision of an administrative agency which is itself the finder of fact . . . summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769-70 (9th Cir. 1985). "The function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did . . . ." *Id.* "In reviewing an agency's decision under section 706(2)(A), a court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. After considering the relevant data, the court must articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In order for an agency decision to be upheld under the arbitrary and capricious standard, a court must find that evidence before the agency provided a rational and ample basis for its decision." *Nw. Motorcycle*, 18 F.3d at 1471 (citations and quotation marks omitted).

"[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits," but the Court must consider all evidence submitted in support of both cross-motions when separately reviewing the merits of each motion. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation marks omitted).

II. Counts One And Two—The "Visa Fraud" Claims

In Count One of the complaint, Plaintiffs assert that "ICE's determination that Plaintiffs knowingly participated in visa fraud was not accompanied by constitutionally adequate procedural protections and violated Plaintiffs due process rights." (Doc. 1 ¶ 55.) Similarly, in Count Two, Plaintiffs assert that "ICE's finding that Plaintiffs engaged in knowing visa fraud in connection with their enrollment at the University of Farmington violates the [APA] and should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law." (*Id.* ¶ 59.) Both counts are expressly predicated on the notion that ICE made a "determination" or "finding" that Plaintiffs knowingly engaged in visa fraud. (*See also id.* ¶ 57 ["ICE simply made a blanket determination that any students who ever enrolled in the University of Farmington knowingly participated in visa fraud . . . ."].)

The fundamental difficulty with these claims is that the CAR is devoid of evidence that ICE ever made such a determination or finding. In the order soliciting supplemental briefing, the Court pointed out this omission. (Doc. 44 at 2-3 ["[A]s for ICE's purported 'finding [or determination] that Plaintiffs knowingly participated in visa fraud,' the Court cannot find any evidence in the record that ICE made such a finding or determination. . . . Given this backdrop, the Court will order Plaintiffs to provide supplemental briefing . . . limited to identifying, *with clarity*, evidence that is in the CAR or otherwise subject to judicial notice that tends to establish that . . . ICE made a finding that Plaintiffs committed fraud . . . ."].) In response, Plaintiffs conceded that the CAR lacks any evidence of a visa fraud finding or determination. (Doc. 47 at 1 ["It is apparent that vital documentation/evidence is omitted from the CAR . . . [that] would undoubtedly support Plaintiffs' assertion that ICE made a blanket determination that they engaged in knowing visa fraud."].) This concession forecloses Plaintiffs from prevailing on Counts One and Two. *Nw. Motorcycle*, 18 F.3d at 1472 ("[T]his case involves review of a final agency determination under the [APA]; therefore, . . . the court's review is limited to the administrative record.").

In their supplemental brief, Plaintiffs also identify three documents from outside the CAR that, in their view, establish the existence of a fraud finding: (1) a request for evidence ("RFE") letter that USCIS wrote to Ratikrindi in June 2020; (2) a declaration of USCIS employee Stephen A. Webber; and (3) an email from the office of United States Senator Krysten Sinema. (Doc. 47 at 2-5).[6] Notably, Plaintiffs do not even provide copies of these documents—they simply purport to quote from or summarize them.

These documents are not properly before the Court in this APA action, but even if they were, and even if the Court were to uncritically accept the accuracy of Plaintiffs' summaries of them, they do not establish a finding of fraud. For example, Plaintiffs contend that the RFE alleges that students knew Farmington was not a real university, but the only mention of "fraud" is in the headline of a press release, which asserts that academic *brokers* were "indicted for fraud." (Doc. 47 at 2.) As for the Webber declaration, although Plaintiffs contend that it uses the phrase "visa fraud," they do not contend that it alleges *Plaintiffs* committed visa fraud or that there was a formal finding of such fraud. (*Id.* at 4.) Finally, according to Plaintiffs' summary, the email from Senator Sinema's office simply states that USCIS "is unable to render a decision on . . . Yerrapareddypeddireddy's application until certain issues are resolved." (*Id.* at 5.) Plaintiffs do not explain why this qualifies as a finding that Plaintiffs committed visa fraud.

Under the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. Plaintiffs have produced no evidence showing that there was a finding of visa fraud, and have thus identified no agency action, much less a final agency action, that is subject to judicial review. Accordingly,

---

[6] Plaintiffs also assert that the mere fact Yerrapareddypeddireddy is under investigation by HSI, which "is the principal investigative arm of [DHS]," amounts to a finding of fraud. (Doc. 47 at 3.) This argument is easily rejected. *Gray v. Alpha & Omega Semiconductor Ltd.,* 2021 WL 4429499, *9 (S.D.N.Y. 2021) ("[G]overnment investigations are just that, investigations. Here, the fact that the government is probing AOS's conduct for wrongdoing cannot be enough to establish that wrongdoing has been or will be found.") (citations and internal quotation marks omitted); *City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 942 (S.D. Ind. 2005) ("Suffice it to say, . . . the mere existence of that investigation cannot support any inferences of wrongdoing . . . .").

Defendants are entitled to summary judgment as to Counts One and Two of the complaint.

III.   Count Three

In Count Three, Plaintiffs assert that "ICE's termination of Plaintiffs' F-1 student status violates the [APA.]" (Doc. 1 ¶ 62.)

An initial difficulty in evaluating this claim is that, although the phrase "termination of student status" (or some variant of that phrase) is used throughout Plaintiffs' briefing, it is never clearly defined. The complaint and moving papers can be read to define "termination of student status" as alternatively meaning (1) DHS caused Plaintiffs' F-1 visas to be terminated,[7] (2) ICE caused Plaintiffs' F-1 visas to be terminated,[8] and/or (3) ICE caused Plaintiffs' SEVIS records to be terminated.[9]

The Court will begin with the third possible construction—that the "agency action" in question is the termination of Plaintiffs' SEVIS records. (*See also* Doc. 1 ¶ 51 [identifying ICE director Matthew Albence as the person "ultimately responsible for the . . . decision to terminate Plaintiffs' SEVIS records"].) On the merits,[10] Defendants assert that "any action by ICE to change the SEVIS records of Farmington enrollees, including those of Plaintiffs, would not have been an arbitrary or capricious decision where they were not students at all—ICE was not required to ignore the reality that Plaintiffs were never actually pursuing any course of study at Farmington." (Doc. 27 at 21.) Defendants note that, under 8 C.F.R. § 214.2(f)(5)(i), nonimmigrant status only persists while an "F-1 student is pursuing a full course of study at an educational institution approved by the

---

[7]   Doc. 30 at 7 n. 34 ("DHS appears to have terminated their F-1 visas . . . .")

[8]   Doc. 30 at 8 (referring to "ICE's termination of the Plaintiffs' F-1 visa status")

[9]   Doc. 30 at 11 ("ICE began terminating the SEVIS records for each of the more than 100 noncitizens who had enrolled at [Farmington] . . . ."); Doc. 1 ¶ 36 (same).

[10]   Defendants contend this Court lacks jurisdiction because Yerrapareddypeddireddy has applied for reinstatement and is facing removal proceedings, both of which render the SEVIS termination non-final. (Doc. 31 at 4.) However, the Third Circuit rejected similar arguments in *Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172 (3d Cir. 2019). Although it is possible the Ninth Circuit might reach a different outcome if presented with the same issues in this case, *but see United States v. Chavez-Vernaza*, 844 F.2d 1368, 1374 (9th Cir. 1987) ("[A]bsent a strong reason to do so, we will not create a direct conflict with other circuits."), the Court declines to conduct an in-depth analysis of this fairly complex jurisdictional issue because it is so apparent that Count Three fails for other reasons.

Service for attendance by foreign students" and here "[i]t is undisputed here that the Plaintiffs were not pursuing a full course of study at Farmington when their SEVIS records were changed. . . . [I]t is equally impossible for Plaintiffs to claim that they were 'pursuing a full course of study at an educational institution approved by the Service for attendance' once Farmington was shut down. Without any sort of school for them to 'attend,' they were no longer bona fide students. In short, the agencies were left with no choice under the law besides changing the SEVIS entries of enrollees to reflect that they were not 'students' after Farmington closed down." (*Id.* at 21-22.)

All of Plaintiffs' responsive arguments regarding Count Three seem to be predicated on the notion that ICE made a finding or determination that they had committed visa fraud. (Doc. 30 at 11-12.) For example, Plaintiffs accuse ICE of making "a blanket finding that any noncitizen who enrolled in University of Farmington knowingly participated in visa fraud" and argue that this approach was arbitrary and capricious because ICE "did not provide students with an individualized hearing or any meaningful opportunity to contest its determination that they had committed knowing visa fraud." (*Id.* at 11.) Similarly, Plaintiffs contend that they "are genuinely aggrieved after having their lawful status terminated and a notation of fraud placed on their records, thereby permanently branding each of them with negative marks on their names." (*Id.* at 12.) The difficulty with these arguments is that, as discussed in Part II above, there is no "finding of fraud" in the record. Although the Court has carefully reviewed and attempted to decipher all of Plaintiffs' assertions, it is difficult to understand what remains of any SEVIS-based claim in Count Three once the factual predicate of a "fraud finding" has been wiped away.

In any event, the Court is confident that Defendants must prevail on Count Three, regardless of what Plaintiffs might have argued if not under the mistaken impression that a fraud finding had been made. Courts may only set aside a final agency action under the APA if that action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Courts review agency decisions to determine whether the agency "articulated a rational connection between the factual findings and its

decision," *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1132 (9th Cir. 2010), and "should not substitute [their] judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

On January 29, 2019, ICE informed Yerrapareddypeddireddy that his "SEVIS record . . . has been set to Terminated status for otherwise failing to maintain status. The University of Farmington has been closed by the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement." (Doc. 27-1 at 2.) As for Ratikrindi, although the record does not appear to contain evidence specifically related to her SEVIS termination, the parties seemingly agree that her record was terminated around the same time and for the same reasons as Yerrapareddypeddireddy's.

It is undisputed that, as of January 29, 2019, Farmington was no longer operating. The Court agrees with Defendants that, as a logical matter, an F-1 student is no longer pursuing a full course of study at an educational institution if that institution has ceased to exist. The termination of Plaintiffs' SEVIS records was thus a "clerical duty performed as a preliminary matter and in accordance with federal regulations." *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487, *5 (S.D. Tex. 2009), *aff'd sub nom. Fenghui Fan v. Brewer*, 377 F. App'x 366, 368 (5th Cir. 2010). At a minimum, the termination was not arbitrary and capricious. Plaintiffs do not raise and develop any reasoned argument to the contrary, apart from their inaccurate claim that they were found to have engaged in visa fraud.

Alternatively, if the "agency action" in question in Count Three is the termination of Plaintiffs' F-1 visas (as opposed to their SEVIS records), Plaintiffs' claims fail for the same and potentially additional reasons. Because Plaintiffs have failed to demonstrate that the termination of their SEVIS records was arbitrary and capricious, this seems to foreclose any claim that the resulting revocation of their F-1 visas (or F-1 status) was arbitrary and capricious. Plaintiffs do not raise and develop any reasoned argument on this issue, other than to reassert their inaccurate claim about the fraud finding.

Finally, one or both Plaintiffs may lack standing with respect to Count Three to the

extent it is premised on a visa-revocation theory. "[T]he irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant [causation], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations and quotation marks omitted). Here, as for Ratikrindi, she was granted H-1B visa status on January 9, 2019, which was before Farmington closed, pursuant to an application submitted by her then-employer, Tekdoors. In the order soliciting supplemental briefing, the Court noted that this chronology makes "it is hard to understand how the challenged conduct related to Farmington caused Ratikrindi's F-1 status to be 'terminated'" but afforded Plaintiffs an opportunity to identify evidence "that tends to establish that . . . ICE's conduct in relation to Farmington caused the termination of Ratikrindi's F-1 status." (Doc. 44 at 3.) In response, Plaintiffs acknowledge that they are "not denying Defendants' contention that her 'F-1 non-immigrant status was changed to H-1B independently of Farmington on January 9, 2019—twenty days before the school was closed.'" (Doc. 47 at 2.) Given this concession, Ratikrindi could not establish causation, an essential element of standing, if Count Three were premised on a visa-revocation theory. Finally, as for Yerrapareddypeddireddy, Defendants assert that the Secretary of State, who is not a named party, bears ultimate responsibility for the revocation of visas. (Doc. 35 at 5 n.1.) Although this issue is not briefed in any depth and the Court expresses no view as to its merits, assuming Defendants are correct, it is difficult to see how the Court could redress Yerrapareddypeddireddy's asserted visa-revocation injury absent the Secretary of State's participation.

…

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that Defendants' cross-motion for summary judgment (Doc. 27) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary judgment (Doc. 24) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and terminate this action.

Dated this 16th day of November, 2021.

Dominic W. Lanza
United States District Judge